Per Curiam.

A condensed history of Amended House Joint Resolution No. 31 and accompanying incidents is contained in the brief of defendant. Such account corresponds with the record and we quote it, with minor changes, as follows:
“House Joint Resolution No. 31, proposing to amend Article X of the Ohio Constitution by adding Sections 5 and 6 thereto relative to metropolitan federations, was offered in the House of Representatives of the 103rd General Assembly on March 2, 1959, and was sent to the Reference Committee of that House on March 3, 1959. On March 31, 1959, said resolution was referred to the Metropolitan Areas Committee.
“On April 30, 1959, said resolution was reported to the House of Representatives by the Metropolitan Areas Committee with recommended amendments and as amended to be adopted.
“On May 27,1959, Amended House Joint Resolution No. 31, hereinafter known as amended resolution, was taken up for consideration by the House of Representatives but failed to receive the needed three-fifths vote required for its adoption.
“On June 3,1959, said amended resolution was reconsidered by the House of Representatives and was passed by a vote of 84 yeas and 39 nays.
“On June 3, 1959, said amended resolution was received by the Senate of Ohio, and on June 10, 1959, said resolution was referred to the Senate Judiciary Committee and on June 17, 1959, said committee reported said resolution to the Senate with a recommendation that the same be adopted.
“On July 8, 1959, said Amended House Joint Resolution No. 31, as amended, was amended and adopted by the Senate.
“On July 22, 1959, the Senate being informed that the House of Representatives had refused to poncur in its amendments to said amended resolution, receded from said amendments which had the effect of passing said Amended Joint House Resolution No. 31 in the form as passed by the House.
*27 “On August 1, 1959, the President of the Senate and the Speaker of the House signed the enrolled Amended House J oint Resolution No. 31 and forwarded the same to the Secretary of State where it was filed on August 3, 1959, accompanied by the engrossed copy of Amended House Joint Resolution No. 31.
“On August 20, 1959, the Secretary of State certified the official election ballot to all boards of elections of the state of Ohio. Such certification included forms to be used by said boards in submitting to the electors at the general election in November, 1959, the constitutional amendment proposed by said amended house joint resolution. The form of the ballot for said constitutional amendment was prepared by the Secretary of State in accordance with the provisions of the enrolled Amended House Joint Resolution No. 31.
“The General Assembly of the State of Ohio adjourned on August 14,1959, and has not been in session since that date.
“On the afternoon of August 28, 1959, the Clerks of the House of Representatives and Senate of the General Assembly of Ohio, through their assistant clerks, inserted the full text of the Amended House Joint Resolution No. 31 in the original journal for June 3, 1959, in the House of Representatives and in the original daily journal for July 8, 1959, in the Senate. This ivas the first time that the full text appeared on the original journal of either house.” (Emphasis supplied.)
The Secretary of State received these corrected journals on August 28,1959.
As pertinent here, Section 1, Article XVI of the Constitution of Ohio, reads:
“Either branch of the General Assembly may propose amendments to this Constitution; and, if the same shall be agreed to by three-fifths of the members elected to each house, such proposed amendments shall be entered on the journals, with the yeas and nays, and shall be submitted to the electors, for their approval or rejection, on a separate ballot without party designation of any kind, at either a special or a general election as the General Assembly may prescribe. ’ ’ (Emphasis supplied.)
*28 Section 101.61, Revised Code, is as follows:
“The clerk of each house of the General Assembly shall keep a daily journal of the proceedings of such house, which shall be read and corrected in its presence. After the reading and approval of the journal, it shall be attested by the proper clerk, and recorded in books furnished by the Secretary of State. The recorded journals shall be deposited with the Secretary of State, and be the true journals. The original daily journal, as kept, corrected, approved, and attested, shall be delivered by the respective clerks to the printer of the journals for his use in printing them. Each clerk shall read and correct the proof sheets, carefully compare them with the recorded journals, and correct any errors.” (Emphasis supplied.)
Section 101.62, Revised Code, recites:
“No executive message, address, communication of a state officer or board, report of the superintendent or other officers of a state institution or building, petition or memorial, argumentative or voluminous report of a standing or a select committee or a joint committee of both houses, special report of an officer or board in reply to a resolution of either hous$ or to a joint resolution, or other voluminous document, except amendments to the Constitution or to bills and resolutions, and protests of members of either house against an act or resolution thereof, shall be entered upon the journals or recorded in the books provided for in Section 101.61 of the Revised Code.” (Emphasis supplied.)
And, Section 101.63, Revised Code, provides:
“Six hundred copies of the journals of the Senate and House of Representatives respectively shall be printed. * * *”
Obviously, purposes of the quoted legislative enactments are to insure a complete, accurate and up-to-date record of the proceedings of the General Assembly so as to advise the members of the Senate and House in detail as to what transpired during the sessions of those bodies and to afford opportunity to make additions and corrections to accord with the facts.
Upon a consideration of the quoted portions of the organic and statutory law, in connection with the facts, a majority of this court cannot escape the conclusion that mandatory provisions of those laws were not complied with in the adoption of *29 Amended House Joint Resolution No. 31, in that the proposed constitutional amendment was not timely entered on the journals of the House and Senate. There was no journalization of the complete text of the proposal at any time during the sessions of the 103rd General Assembly, and the attempt on August 28, 1959, after final adjournment, to supply the fatal omission by then making the insertions in the original daily journal of the House for June 3, 1959, and in the original daily journal of the Senate for July 8, 1959, came too late. Those material and important insertions had to be made at appropriate prior times.
Although the facts in the case of Leach v. Brown, Secy. of State, 167 Ohio St., 1, 145 N. E. (2d), 525, are not the same as here, there is significant language in the per curiam opinion in that case which lends support to the position we take in the instant case.
Frankly, we are not happy in striking down a proposed constitutional amendment having for its objective the improvement and more efficient operation of government, and thereby denying to electors the opportunity to approve or reject it, but we cannot ignore controlling provisions of law which necessitate that result.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Zimmerman, Taet, Matthias and Bell, JJ., concur.
Herbert and Peck, JJ., dissent.